Louis Pechman, Esq.
Gianfranco J. Cuadra, Esq.
Pechman Law Group PLLC
488 Madison Avenue - 11th Floor
New York, New York 10022
(212) 583-9500
pechman@pechmanlaw.com
cuadra@pechmanlaw.com
*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------- X

MARIE SOPHIE JAAFARI,

                        Plaintiff,

    -against-

LE PERIGORD, INC. d/b/a LE PERIGORD
RESTAURANT, GEORGES BRIGUET, and
CHRISTOPHER PATRICK BRIGUET,

                        Defendants.

**COMPLAINT**

**ECF CASE**

-------------------------------------------------------------------- X

       Plaintiff Marie Sophie Jaafari ("plaintiff" or "Jaafari"), by her attorneys, Pechman Law Group PLLC, complaining of defendants Le Périgord, Inc. d/b/a Le Périgord Restaurant ("Le Périgord"), Georges Briguet, and Christopher Patrick Briguet (collectively, "defendants"), alleges:

### NATURE OF THE ACTION

       1.     This action is brought to recover unpaid minimum and overtime wages pursuant to the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.* ("FLSA"), and New York Labor Law § 190, *et seq.* ("NYLL"). This action is also brought to recover unpaid spread-of-hours pay pursuant to the NYLL and statutory damages as a result of defendants' failure to provide wage statements and annual wage notices pursuant to the Wage Theft Prevention Act.

2.       Throughout most of plaintiff's employment, defendants failed to pay Jaafari any wages.

3.       For most of her employment, plaintiff worked for tips only.

4.       When defendants did pay plaintiff wages, defendants did so at fixed shift rates in violation of the FLSA and the NYLL.

5.       Defendants failed to pay plaintiff spread-of-hours pay on days when her shifts spread across more than ten hours.

6.       Defendants did not furnish plaintiff with annual wage notices at the start of plaintiff's employment and annually, up through 2014, in violation of the Wage Theft Prevention Act ("WTPA").

7.       Defendants did not furnish plaintiff with wage statements, in violation of the WTPA.

8.       Plaintiff seeks compensation for unpaid minimum and overtime wages, unpaid spread-of-hours pay, statutory damages, liquidated damages, pre- and post-judgment interest, and attorneys' fees and costs pursuant to the FLSA, NYLL, and WTPA.

## JURISDICTION

9.       This Court has subject matter jurisdiction of this case pursuant to 29 U.S.C. § 216(b) and 28 U.S.C. §§ 1331 and 1337, and has supplemental jurisdiction over plaintiff's claims under the NYLL pursuant to 28 U.S.C. § 1367.

## VENUE

10.      Venue is proper in the Southern District of New York under 28 U.S.C. § 1391 because all acts alleged in this Complaint occurred in Le Périgord, which is located in the Southern District of New York.

## THE PARTIES

**Plaintiff Marie Sophie Jaafari**

11.     Marie Sophie Jaafari ("Jaafari") resides in Queens, New York.

12.     Defendants have employed Jaafari as a hostess, coat checker, and maître d' from approximately January 2010 to the present.

13.     Jaafari greeted customers, bade them farewell, at times seated them, and took their coats upon arrival.

14.     Defendants required Jaafari to appear as the "face" of Le Périgord on several occasions.  For example, in or about September 2014, defendants required Jaafari to attend and speak in French on behalf of Le Périgord at a restaurant awards ceremony at the Waldorf Astoria in New York City.

**Defendants**

15.     Defendant Le Périgord, Inc. is a New York corporation that owns and does business as Le Périgord Restaurant, an award winning French restaurant located at 405 East 52nd Street, New York, New York 10022 ("Le Périgord").

16.     Opened in 1964, Le Périgord has been recognized as the premiere French restaurant in New York City, serving movie stars, presidents, and celebrities.

17.     Le Périgord is an "enterprise engaged in interstate commerce" within the meaning of the FLSA.

18.     Le Périgord has employees engaged in commerce or in the production of goods for commerce and handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person.

19.     Le Périgord has an annual gross volume of sales in excess of $500,000.

20.     Defendant George Briguet is an owner, President, and Chairman of the Board of Le Périgord.

3

21.     George Briguet exercises sufficient control over Le Périgord's operations to be considered plaintiff's employer under the FLSA and NYLL.

22.     At all relevant times, George Briguet has exercised power over and directed personnel, managerial, administrative, and day-to-day business decisions at Le Périgord, including disciplining employees, hiring and firing employees, setting employee wages, scheduling employee work shifts, determining whether to retain time and/or wage records, and otherwise controlling the terms and conditions of their employment.

23.     For example, George Briguet hired plaintiff as a hostess, coat checker, and maître d'.

24.     For example, George Briguet personally greeted and seated customers at Le Périgord and directed plaintiff on how to check in customers' coats and answer the restaurant telephone.

25.     Defendant Christopher Patrick Briguet ("Christopher Briguet") is the son of George Briguet.

26.     Christopher Briguet is a manager and owner of Le Périgord.

27.     Christopher Briguet exercises sufficient control over Le Périgord's operations to be considered plaintiff's employer under the FLSA and NYLL.

28.     At all relevant times, Christopher Briguet has exercised power over and directed personnel, managerial, administrative, and day-to-day business decisions at Le Périgord, including disciplining employees, hiring and firing employees, setting employee wages, scheduling employee work shifts, determining whether to retain time and/or wage records, and otherwise controlling the terms and conditions of their employment.

29.     For example, Christopher Briguet scheduled plaintiff's work schedule.

4

30.     For example, Christopher Briguet addressed customers' complaints at Le Périgord.

## PLAINTIFF'S FACTUAL ALLEGATIONS

31.     Defendants have systematically ignored the requirements of the FLSA and the NYLL by failing to pay plaintiff the proper minimum and overtime wages and spread-of-hours pay.

32.     The lunch shift at Le Périgord begins at noon and ends at approximately 4:30 p.m. on weekdays.

33.     The dinner shift at Le Périgord begins at 5:00 p.m. and ends at approximately 11:30 p.m. every day of the week.

34.     A double shift consists of both lunch and dinner shifts.

35.     When working the lunch shift, plaintiff regularly began working at or about 11:45 a.m.

36.     From approximately January to March 2010, plaintiff regularly worked two lunch shifts on Wednesday and Thursday and three double shifts on Monday, Tuesday, and Sunday, each week.

37.     Throughout this period, defendants often asked plaintiff to work double shifts on Wednesday and Thursday.

38.     From approximately March 2010 through May 2010, plaintiff regularly worked five double shifts per week, from Monday to Friday.

39.     Plaintiff was out on vacation from approximately June to October 2010.

40.     From approximately October 2010 to May 2011, plaintiff regularly worked five double and one dinner shifts per week.

41.     Plaintiff was out on vacation from approximately June to October 2011.

42. From approximately October 2011 to mid-April 2012, plaintiff regularly worked five double and one dinner shifts per week.

43. In December 2012, defendants sometimes scheduled plaintiff to work one additional dinner shift per week.

44. From approximately mid-April to June 2012, plaintiff regularly worked five dinner shifts per week.

45. During this period, defendants scheduled plaintiff to work three lunch shifts for two weeks in the second half of April 2012.

46. Plaintiff was out on vacation from June 15 to July 21, 2012.

47. From approximately the end of August to September 2012, plaintiff regularly worked three dinner shifts per week.

48. During this period, defendants paid plaintiff $300 for three days worked in the first week of September 2012.

49. Defendants did not pay plaintiff for other hours worked.

50. From approximately September to November 2012, plaintiff regularly worked five double shifts per week.

51. From approximately November through December 2012, plaintiff regularly worked five double shifts per week and one dinner shift.

52. During this period, plaintiff sometimes worked one additional dinner shift per week.

53. For approximately the first half of January 2013, plaintiff regularly worked four double and one lunch shifts per week.

54. From approximately mid-January through April 2013, plaintiff regularly worked five double and one dinner shift per week.

55. Plaintiff was on vacation from May to November 1, 2013.

6

56.     From approximately November through December 2013, plaintiff regularly worked five double and one dinner shifts per week.

57.     During this period, plaintiff sometimes worked one additional dinner shift per week in December 2013.

58.     For approximately the first half of January 2014, plaintiff regularly worked two double and two dinner shifts per week.

59.     From approximately mid-January through April 2014, plaintiff regularly worked six, and sometimes seven, dinner shifts per week.

60.     From approximately May through July 2014, plaintiff regularly worked four double shifts per week.

61.     Plaintiff worked four dinner shifts during the first week of August 2014.

62.     Plaintiff did not work for three weeks in August 2014.

63.     From approximately September through October 2014, plaintiff regularly worked four dinner shifts per week.

64.     From approximately November through December 2014, plaintiff regularly worked two double shifts and three dinner shifts.

65.     Since January 2015, plaintiff has regularly worked five dinner shifts.

66.     During this period, plaintiff has occasionally worked one lunch shift.

67.     Defendants occasionally gave plaintiff $20 for the day as wages, approximately five times per year.

68.     Beginning in or about September 2014, defendants sporadically paid plaintiff different amounts per workweek, ranging from $100 to $700 per week. For example, for the week of March 2 to March 8, 2015, defendants paid $100 by paycheck, without a wage statement, for all hours worked.

## FIRST CLAIM
### (Fair Labor Standards Act – Unpaid Minimum Wage)

69.     Plaintiff repeats and realleges all foregoing paragraphs as if fully set forth herein.

70.     The FLSA requires that employers pay employees a minimum wage for all hours worked weekly up to forty.

71.     Defendants are plaintiff's employers within the meaning of 29 U.S.C. §§ 203(e) and 206(a).

72.     Defendants failed to pay plaintiff the minimum wages to which she was entitled under the FLSA.

73.     Defendants were aware or should have been aware that the practices described in this Complaint were unlawful and have not made a good faith effort to comply with the FLSA with respect to plaintiff's compensation.

74.     As a result of defendants' willful violations of the FLSA, plaintiff suffered damages by being denied minimum wages in accordance with the FLSA in amounts to be determined at trial, and is entitled to recovery of such amounts, liquidated damages, pre- and post-judgment interest, attorneys' fees and costs of this action, and other compensation pursuant to 29 U.S.C. § 216(b).

## SECOND CLAIM
### (New York Labor Law – Unpaid Minimum Wage)

75.     Plaintiff repeats and realleges all foregoing paragraphs as if fully set forth herein.

76.     Defendants are employers within the meaning of the NYLL §§ 190, 651(5), 652, and supporting New York State Department of Labor Regulations, and employed plaintiff.

77. Defendants failed to pay plaintiff the minimum wages to which she was entitled under the NYLL.

78. Defendants were required to pay plaintiff the full minimum wage at a rate of $7.15 for all hours worked from 2010 to December 30, 2013, $8.00 for all hours worked from December 31, 2013, through December 31, 2014, and $8.75 for all hours worked since December 31, 2014, under the NYLL § 650 et seq. and the supporting New York State Department of Labor Regulations.

79. Defendants have willfully violated the NYLL by knowingly and intentionally failing to pay plaintiff the minimum hourly wage.

80. As a result of defendants' violations of the NYLL, plaintiff is entitled to recover her unpaid wages, reasonable attorneys' fees and costs of the action, liquidated damages, and pre- and post-judgment interest.

## THIRD CLAIM
### (Fair Labor Standards Act – Unpaid Overtime)

81. Plaintiff repeats and realleges all foregoing paragraphs as if fully set forth herein.

82. Plaintiff worked in excess of forty hours during some workweeks in the relevant period.

83. Defendants failed to pay plaintiff one and one-half (1½) times the applicable regular rate for all hours worked in excess of forty in a workweek pursuant to the overtime wage provisions set forth in the FLSA, 29 U.S.C. § 207, *et seq.*

84. Defendants have willfully violated the FLSA by knowingly and intentionally failing to pay plaintiff overtime wages.

85. Defendants have not made a good faith effort to comply with the FLSA with respect to the compensation of plaintiff.

9

86.     Due to defendants' violations of the FLSA, plaintiff is entitled to recover her unpaid overtime wages, liquidated damages, reasonable attorneys' fees and costs of the action, and pre- and post-judgment interest.

## FOURTH CLAIM
### (New York Labor Law – Unpaid Overtime)

87.     Plaintiff repeats and realleges all foregoing paragraphs as if fully set forth herein.

88.     Under the NYLL and supporting New York State Department of Labor Regulations, defendants were required to pay plaintiff one and one (1½) half times the applicable regular rate of pay for all hours worked in excess of forty.

89.     Defendants have failed to pay plaintiff the overtime wages to which she was entitled under the NYLL.

90.     Defendants have willfully violated the NYLL by knowingly and intentionally failing to pay plaintiff overtime wages.

91.     Due to defendants' willful violations of the NYLL, plaintiff is entitled to recover her unpaid overtime wages, reasonable attorneys' fees and costs of the action, liquidated damages, and pre- and post-judgment interest.

## FIFTH CLAIM
### (New York Labor Law – Spread-of-Hours Pay)

92.     Plaintiff repeats and realleges all foregoing paragraphs as if fully set forth herein.

93.     Defendants did not pay plaintiff the required spread-of-hours pay of an additional hour's pay at the minimum wage for every day in which her shifts spanned more than ten hours.

94.     Defendants' failure to pay plaintiff the required spread-of-hours pay was willfull.

95.     By defendants' failure to pay plaintiff spread-of-hours pay, defendants willfully violated the NYLL Article 19, § 650, *et seq.*, and the supporting New York State Department of Labor Regulations, including, but not limited to, 12 N.Y.C.R.R. §§ 137-1.7, 3.10, 146-1.6.

96.     Due to defendants' willful violations of the NYLL, plaintiff is entitled to recover unpaid spread-of-hours pay, reasonable attorneys' fees and costs of the action, pre- and post-judgment interest, and liquidated damages.

### SIXTH CLAIM
### (New York Labor Law – Wage Theft Prevention Act)

97.     Plaintiff repeats and realleges all foregoing paragraphs as if fully set forth herein.

98.     The NYLL and Wage Theft Prevention Act ("WTPA") require employers to provide all employees with a written notice of wage rates at the time of hire and whenever there is a change to an employee's rate of pay.  From its enactment on April 9, 2011, through 2014, the Wage Theft Prevention Act also required employers to provide an annual written notice of wages to be distributed on or before February 1 of each year of employment.

99.     The NYLL and WTPA also require employers to provide employees with an accurate wage statement each time they are paid.

100.     Throughout plaintiff's employment with defendants, defendants paid plaintiff without providing a wage statement accurately listing:  the overtime rate or rates of pay; the number of regular hours worked, and the number of overtime hours worked; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; and net wages.

101.    In violation of NYLL § 191, defendants failed to furnish to plaintiff at the time of hiring, whenever there was a change to plaintiff's rates of pay, and on or before February 1 of each year of employment through 2014, wage notices containing the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer in accordance with NYLL § 191; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; the telephone number of the employer, and anything otherwise required by law; in violation of the NYLL § 195(1).

102.    Defendants failed to furnish plaintiff with each payment of wages an accurate statement listing:  the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; the regular hourly rate or rates of pay; the overtime rate or rates of pay; the number of regular hours worked, and the number of overtime hours worked; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; and net wages; in violation of the NYLL § 195(3).

103.    Due to defendants' violation of NYLL § 195(1), plaintiff is entitled to recover from defendants liquidated damages of $50 per day that the violation occurred, up to a maximum of $5,000, reasonable attorneys' fees, and costs and disbursements of the action, pursuant to the NYLL § 198(1-b).

104.    Due to defendants' violation of NYLL § 195(3), plaintiff is entitled to recover from defendants liquidated damages of $250 per workweek that the violation

occurred, up to a maximum of $5,000, reasonable attorney's fees, and costs and disbursements of the action, pursuant to the NYLL § 198(1-b).

## PRAYER FOR RELIEF

WHEREFORE, plaintiff, respectfully requests that this Court enter a judgment:

a.      declaring that defendants have violated the minimum wage provisions of the FLSA and the NYLL;

b.      declaring that defendants have violated the overtime provisions of the FLSA and the NYLL;

c.      declaring that defendants have violated the spread-of-hours provisions of the NYLL;

d.      declaring that defendants' violations of the FLSA and NYLL were willful;

e.      declaring that defendants violated the notice provisions of the NYLL and WTPA;

f.      awarding plaintiffs damages for unpaid minimum wages, pursuant to the FLSA and the NYLL;

g.      awarding plaintiffs damages for unpaid overtime wages;

h.      awarding plaintiffs damages for unpaid spread-of-hours compensation;

i.      awarding plaintiffs liquidated damages in an amount equal to twice the total amount of the wages found to be due, pursuant to the FLSA and NYLL;

j.      awarding plaintiffs reasonable attorneys' fees, costs, and interest pursuant to the FLSA and the NYLL; and

      k.     awarding such other and further relief as the Court deems just and

proper.

Dated:     New York, New York
           July 22, 2015

                                     PECHMAN LAW GROUP PLLC

                       By: _____
                           Louis Pechman, Esq.
                           Gianfranco J. Cuadra, Esq.
                           Pechman Law Group PLLC
                           488 Madison Avenue - 11th Floor
                           New York, New York 10022
                           (212) 583-9500
                           pechman@pechmanlaw.com
                           cuadra@pechmanlaw.com
                           *Attorneys for Plaintiff*